UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____
```

GRAVITAS SEARCH PARTNERS LLC,

>Plaintiff,

-against-

JENNIFER A. DEUTSCH, PREMIUM PARTNERS
LLC and INMAR, INC.,

>Defendants.

24-CV-02683 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Gravitas Search Partners LLC ("Plaintiff" or "Gravitas") brings this action against Jennifer A. Deutsch ("Deutsch"), Premium Partners LLC ("Premium Partners"), and Inmar, Inc. ("Inmar") (collectively "Defendants"), alleging that Deutsch misused Plaintiff's confidential information and neglected her responsibilities as Plaintiff's employee in order to run a secret, competing side business. As to Deutsch, Plaintiff has brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the duty of loyalty, conversion, misappropriation of confidential information, and usurpation of corporate opportunity. As to Premium Partners, a company allegedly founded by Deutsch to facilitate her side business, Plaintiff has brought a claim for conversion. And as to Inmar, an alleged client of Deutsch's side business that later became Deutsch's employer, Plaintiff has brought claims for aiding and abetting the breach of the duty of loyalty, aiding and abetting the breach of the implied covenant of good faith and fair dealing, and aiding and abetting the usurpation of corporate opportunity.

Pending before the Court are a motion by Deutsch and Premium Partners to dismiss the First Amended Complaint (Dkt. No. 29, "First Amended Complaint" or "FAC"), a separate

1

motion by Inmar to dismiss the FAC, and a motion by Plaintiff for leave to file a Second

Amended Complaint ("Second Amended Complaint" or "SAC").  For the reasons set forth

below, Inmar's motion to dismiss is GRANTED, Deutsch and Premium Partners' motion to

dismiss is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion for leave to file

the Second Amended Complaint is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

## I.    FACTUAL BACKGROUND[1]

### A.  Plaintiff

Plaintiff is a limited liability company "in the business of providing tailored talent

solutions" to corporate clients.  FAC ¶ 11.  It focuses on "retained search services," which

involves assisting companies in finding and vetting candidates for senior-level roles.  *Id.*

Additionally, it provides more general human resources-related consulting services, including

"talent and diversity mappings, individual talent and team assessments, succession planning

services, organizational design services and transition advisory services."  *Id.*

### B.  Deutsch and Premium Partners

Defendant Deutsch was Plaintiff's employee beginning on April 13, 2022, and ending

with her voluntary resignation on October 18, 2023.  *Id.* ¶¶ 2, 14.  She was hired to support

Plaintiff's retained search business, and her responsibilities included contacting and pitching

prospective clients, conducting online searches to identify candidates for clients' open positions,

pitching and vetting those candidates, and advising clients on their talent searches.  *Id.* ¶ 15.

Additionally, Deutsch was hired to "generate new business for [Plaintiff] in the Human

---

[1] The following facts are taken from the allegations in the FAC and are assumed true for the
purpose of resolving these motions.

Resources vertical," based on Plaintiff's view that its consulting services could generate additional engagements for its retained search services. *Id.* ¶ 16.

At the outset of her employment with Plaintiff, Deutsch signed a mandatory Confidentiality and Non-Solicitation Agreement (the "Agreement"). *Id.* ¶ 17. The Agreement provided that, so long as she was Plaintiff's employee, Deutsch could not use Plaintiff's confidential information for her own benefit or disclose it to unauthorized parties. *Id.* ¶ 18. It also provided that, so long as she was Plaintiff's employee and for one year thereafter, Deutsch could not solicit Plaintiff's clients or prospective clients for herself. *Id.* ¶ 21. Relatedly, Plaintiff also asserts that Deutsch owed duties of trust, good faith, and loyalty as an agent of Plaintiff. *Id.* ¶ 99.

Deutsch allegedly violated the Agreement and her non-contractual duties to Plaintiff by neglecting her employment obligations in order to pursue an undisclosed side business that capitalized on Plaintiff's confidential information, resources, and client relationships. *Id.* ¶ 23–25, 28–35. While working for Plaintiff (and beginning shortly after she learned that Plaintiff was restructuring her compensation), Deutsch formed and operated Defendant Premium Partners, a company that provided "the same or similar search and human resource-related consulting services that [Deutsch] was hired to do at [Plaintiff]." *Id.* ¶¶ 28–29. All the while, Deutsch allegedly failed to perform work for Plaintiff yet used its equipment and resources to advance her independent business. *Id.* ¶¶ 23–25, 57, 65.

### C. Inmar

One of Deutsch's and Premium Partners' clients was Defendant Inmar, which engaged Deutsch for certain consulting and recruiting work while she was still employed by Plaintiff. *Id.* ¶¶ 34, 57, 60. Subsequently, Inmar hired Deutsch as its Vice President of Talent Acquisition. *Id.* ¶ 39. The relationship was facilitated by Inmar's Chief Human Resources Officer, Kathleen

Dalton, who formerly held a similar position at one of Plaintiff's client firms. *Id.* ¶ 50–52.

Plaintiff alleges that Deutsch and Dalton first became acquainted in the context of the business

relationship between Plaintiff and Dalton's former employer, with Deutsch acting as Plaintiff's

representative, and Dalton acting as Plaintiff's client. *Id.* ¶ 53–55.  According to Plaintiff,

Deutsch therefore improperly used her position at Plaintiff to establish independent business

relationships with Plaintiff's clients and prospective clients, including Dalton and Inmar. *Id.*

¶ 94.  It further alleges that Dalton and Inmar knew that Deutsch was Plaintiff's employee and

nonetheless retained and paid her for "the exact type of business" that Deutsch was doing for

Plaintiff, thereby depriving Plaintiff of work and income that rightfully belonged to it. *Id.* ¶¶ 68–

70, 78–80.

## II.     PROCEDURAL HISTORY

Plaintiff initially filed a complaint in New York state court on February 15, 2024, naming

Deutsch and two Corporate Does as defendants. Dkt. No. 1-2.  The action was then removed to

this Court on April 9, 2024.  Dkt. No. 1.  Deutsch moved to dismiss the complaint on April 16,

2024.  Dkt. No. 12.  Pursuant to its rights under Rule 15 of the Federal Rules of Civil Procedure

and Rule II(B)(6) of this Court's Individual Rules, Plaintiff responded by filing the First

Amended Complaint on May 8, 2024.  Dkt. No. 29.  The First Amended Complaint alleged

substantial additional facts, added new claims, and identified Premium Partners and Inmar as the

Corporate Does. *Id.*

Defendants filed the two pending motions to dismiss the First Amended Complaint on

June 13, 2024.  Dkt. Nos. 51 (Inmar), 55 (Deutsch and Premium Partners).  On July 15, 2024,

Plaintiff voluntarily dismissed Counts IV, V, VI, VIII, and IX from the First Amended

Complaint, which included: (i) the claims against Deutsch for conversion, misappropriation of

confidential information, and usurpation of corporate opportunity; (ii) the claim against Premium

Partners for conversion; and (ii) the claims against Inmar for aiding and abetting the breach of

the implied covenant of good faith and fair dealing and for aiding and abetting the usurpation of

corporate opportunity. Dkt. Nos. 63, 65 at 9–10. The same day, Plaintiff filed oppositions to the

motions to dismiss and simultaneously moved for leave to file the Second Amended Complaint,

having already exhausted its one opportunity to amend its complaint as of right. Dkt. Nos. 64,

67, 68. Plaintiff stated three purposes for its proposed amendment: (1) to add a claim against

Premium Partners for aiding and abetting the breach of the duty of loyalty; (2) to bolster

Plaintiff's factual allegations in response to purported deficiencies raised in the two pending

motions to dismiss, and (3) to eliminate the claims and allegations that Plaintiff had voluntarily

dismissed. Dkt. No. 65. Thus, the proposed Second Amended Complaint contains five causes of

action: (1) breach of contract as to Deutsch; (2) breach of the implied covenant of good faith and

fair dealing as to Deutsch; (3) breach of the duty of loyalty/faithless servant doctrine as to

Deutsch; (4) aiding and abetting breach of the duty of loyalty as to Premium Partners; and (5)

aiding and abetting breach of the duty of loyalty as to Inmar. Dkt. No. 66-1. The parties

thereafter concurrently completed briefing on the three motions.

**DISCUSSION**

I.    **PLAINTIFF'S MOTION TO AMEND**

   A. **The Interaction Between the Motion for Leave to Amend and the Motions to Dismiss**

   When a plaintiff seeks to amend a complaint while a motion to dismiss is pending, "a

court has a variety of ways in which it may deal with the pending motion to dismiss, from

denying the motion as moot to considering the merits of the motion in light of the amended

complaint." *Guan v. Lash Princess 56 Inc.*, No. 22-CV-02552 (KPF), 2023 WL 2242050, at *3

(S.D.N.Y. Feb. 27, 2023) (internal references omitted).  Where the proposed amendment requires

leave of court, and especially where a plaintiff seeks to add claims or allegations that defendants

have not fully addressed in the pending motion to dismiss, "the preferred course is to grant leave

to amend even if doing so renders moot the motion to dismiss."  *Han v. Fin. Supervisory Serv.*,

No. 23-CV-05451 (MKV), 2025 WL 588078, at *1 (S.D.N.Y. Feb. 24, 2025) (internal reference

omitted).  However, rather than indiscriminately permitting the repleading of inadequate claims,

the Court should adopt an approach that "promotes judicial economy by obviating the need for

multiple rounds of briefing addressing complaints that are legally insufficient."  *Diallo v. New

York City*, No. 23-CV-01238 (LAP), 2025 WL 522514, at *5 (S.D.N.Y. Feb. 18, 2025) (quoting

*Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020)).

Accordingly, the first question is whether there is any basis for denying outright the

motion for leave to amend.  District courts may deny leave to amend where there is a showing of

undue delay, bad faith, prejudice, or futility.  The last factor, futility, "effectively requires [the

Court] to address the merits of Defendants' pending motion[s] to dismiss."  *Boyer Works USA,

LLC v. Rubik's Brand Ltd.*, No. 21-CV-07468 (AKH), 2022 WL 355398, at *3 (S.D.N.Y. Feb. 7,

2022).  In the interest of judicial economy, the Court will first assess whether there is a showing

of undue delay, bad faith, or prejudice, and if there is no such showing, the Court will "consider

Defendants' motion [to dismiss] in light of the allegations in the proposed SAC," effectively

combining the futility analysis with resolution of Defendants' motions.  *Id.*

### B.  The Court Grants in Part the Motion for Leave to Amend

#### 1.    Legal Standard

Plaintiff's motion is governed by Federal Rule of Civil Procedure 15(a), which provides

that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P.

15(a).  Under this liberal standard, leave is generally given so long as (1) the party seeking the

amendment has not unduly delayed, (2) that party is not acting in bad faith or with a dilatory

motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the

amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The moving party "must

explain any delay," but the party opposing the amendment bears the burden of showing bad faith,

prejudice, or futility. *See United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285

F. Supp. 3d 759, 766 (S.D.N.Y. 2018) (collecting cases).

2.    **Analysis**

The first three factors favor granting leave to amend here.

i.    **Undue Delay**

Although this is Plaintiff's second attempt to amend the complaint, following a second

round of Defendants' motions to dismiss, there is no "delay" within the meaning of this factor,

given that its motion quickly followed Defendants' motions to dismiss the First Amended

Complaint. *See Joint Stock Co. v. Infomir LLC*, No. 16-CV-01318 (GBD) (BCM), 2017 WL

2988249, at *1 (S.D.N.Y. Mar. 27, 2017) (finding no undue delay where plaintiffs moved for

leave to amend twenty-four days after defendant moved to dismiss and before any defendant

answered the complaint). Defendants raise no arguments to the contrary.

ii.    **Bad Faith**

Nor have Defendants met their burden to show that Plaintiff acted in bad faith. Bad faith

exists where counsel conveyed a misleading impression that claims were fixed or where the

earlier decision not to plead additional allegations "was a tactical one." *City of Birmingham

Firemen's & Policemen's Suppl. Pension Sys. v. Ryanair Holdings PLC*, No. 18-CV-10330

(JPO), 2022 WL 4377898, at *2 (S.D.N.Y. Sept. 22, 2022) (quoting *State Trading Corp. of India

v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)). Defendants offer little more

than an assertion that the new allegations in the Second Amended Complaint could have been

7

pleaded earlier, but "the fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith." *De La Rosa Martinez v. Harbor Express, LLC*, No. 15-CV-07458 (GBD) (DF), 2020 WL 7249499, at *8 (S.D.N.Y. Oct. 19, 2020) (quoting *Randolph Found. v. Duncan*, No. 00-CV-01172 (AKH) (THK), 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002)). This is particularly true here, where the case was removed from state court and Deutsch's first motion to dismiss was directed against that state court complaint. The First Amended Complaint was the first pleading tailored to the federal court action. Defendants moved to dismiss the First Amended Complaint and, in response to those motions, Plaintiff promptly sought leave to file the Second Amended Complaint. The Court finds no gamesmanship here, but it notes that it is unlikely to entertain future amendments seeking to cure potential deficiencies in Plaintiff's pleading.

### iii.    Undue Prejudice

Defendants will not be unduly prejudiced by the amendment. Deutsch briefly argues to the contrary, noting that Plaintiff "has already forced her to incur significant expense in the form of two motions to dismiss, including to fend off claims that [Plaintiff] has now voluntarily dismissed." Dkt. No. 73 at 22–23. This asserted burden, while understandable, does not rise to level of undue prejudice.

When assessing prejudice, courts weigh several considerations, including "whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (internal references omitted) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "Mere allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Consumer Fin. Prot. Bureau v. MoneyGram Int'l, Inc.*, No. 22-CV-03256

(KPF), 2025 WL 297389, at *6 (S.D.N.Y. Jan. 24, 2025) (internal references omitted) (quoting *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)).

Further, the degree of potential prejudice depends on the overall progress in the case: "the closer to the end of discovery or the closer to trial a motion to amend is filed, the more likely that it will cause prejudice and delay to the nonmoving party." *Foster v. UPS Freight, Inc.*, No. 18-CV-10294 (NSR) (LMS), 2020 WL 5350446, at *5 (S.D.N.Y. Sept. 4, 2020), *report and recommendation adopted*, 2022 WL 370070 (S.D.N.Y. Feb. 8, 2022), *amended*, 2022 WL 656778 (S.D.N.Y. Mar. 4, 2022). When discovery is not yet underway, the added delay and expense of responding to a new complaint does not ordinarily rise to the level of undue prejudice. *See Cortese v. Skanska Koch, Inc.*, No. 20-CV-01632 (LJL), 2020 WL 13093237, at *2 (S.D.N.Y. Oct. 22, 2020) (no undue prejudice where "[d]efendants have not yet filed an answer, the parties have not served discovery responses, no parties or witnesses have been deposed, and the motion was filed within the deadline for an amended pleading set by the Court in its case management plan."); *Joint Stock Co.*, 2017 WL 2988249, at *1 (no undue prejudice where "the parties are far from trial, no [d]efendant has answered, no Rule 16 conference has been held, and no discovery deadlines have been established").

Granting leave to amend here would not cause undue prejudice to Deutsch or any defendant. The case is far from trial, and no significant discovery has taken place. While granting leave to amend would potentially create additional work for the parties, the burden is not undue.

### iv.    Futility

Plaintiff's proposed amendments are futile in part, which the Court will analyze fully in the context of Defendants' motions to dismiss. "A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted."

9

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012).

The futility of an amendment is thus assessed under the standard for a Rule 12(b)(6) motion to

dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d

Cir. 2002), *abrogated in part on other grounds by Knick v. Township of Scott*, 588 U.S. 180, 185

(2019). Under that standard, the proposed amended complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendants bear the burden of establishing futility, and the Court accepts all factual allegations

in the proposed amended complaint as true and draws all reasonable inferences in the light most

favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

In the interest of judicial economy, the Court will collapse the futility analysis into the

12(b)(6) analysis by considering Defendants' motions to dismiss in light of the allegations

proposed in the Second Amended Complaint. *See Boyer Works USA*, 2022 WL 355398, at *3.

## II.      DEFENDANTS' MOTION TO DISMISS

### A. Background

In the Second Amended Complaint, Plaintiff claims that Deutsch breached her

contractual obligations and duty of loyalty to Plaintiff by failing to perform her work

responsibilities, creating Premium Partners to compete with Plaintiff, using Plaintiff's resources

and confidential information to pursue business opportunities for her own benefit,

communicating with and soliciting business from a Gravitas client, and collecting fees for her

own benefit for search and consulting services that she should have been providing through

Plaintiff.

A single claim against Deutsch for breach of contract consists of allegations spanning the

entire scope of Deutsch's alleged misconduct, including multiple theories of breach stemming

from two related agreements—an offer letter outlining the terms of Deutsch's employment ("Offer Letter") and the Agreement, both executed on April 12, 2022, the day before Deutsch's employment with Plaintiff began.  A single claim against Deutsch for breach of the implied covenant of good faith and fair dealing references the same set of allegations, as does a single claim against Deutsch for breach of the duty of loyalty.  One claim against Premium Partners alleges that it aided and abetted Deutsch's breach of the duty of loyalty.  Finally, one claim against Inmar alleges that it, too, aided and abetted Deutsch's breach of the duty of loyalty.

Deutsch and Premium Partners move to dismiss and assert the futility of all claims against them under Rule 12(b)(6) for failure to state a claim.  They also argue that Plaintiff has failed to establish personal jurisdiction over Premium Partners and failed to properly serve Deutsch, requiring dismissal under Rules 12(b)(2) and 12(b)(5), respectively.

### B.  The Court Lacks Personal Jurisdiction over Premium Partners

Premium Partners is a limited liability company organized under the laws of New Jersey with a principal place of business in New Jersey.  SAC ¶ 7.  It argues that Plaintiff has not alleged facts to show that it is subject to jurisdiction in the New York.  The Court agrees.

Personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).  This determination involves a two-step analysis.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302.  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 465 (S.D.N.Y. 2008).  If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the Court will then evaluate whether the

exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the

United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d

Cir. 2010). "On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the

plaintiff bears the burden of establishing personal jurisdiction." *BWP Media USA Inc. v.*

*Hollywood Fan Sites*, *LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v.*

*Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

Outside of a single footnote, Plaintiff does not identify the provision of New York law

that supports this Court's jurisdiction over Premium Partners, but the Court construes the

argument that Plaintiff "was a New York-based company and was significantly harmed by . . .

Premium Partners' wrongdoing," *see* Dkt. No. 77 at 10 & n.16, as an appeal to C.P.L.R.

§ 302(a)(3), which provides for jurisdiction over out-of-state tortfeasors who cause in-state harm.

More specifically, Section 302(a)(3) states that New York courts have jurisdiction if a non-

domiciliary:

> [C]ommits a tortious act without the state causing injury to person or property
> within the state . . . if he (i) regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial revenue from goods
> used or consumed or services rendered, in the state, or (ii) expects or should
> reasonably expect the act to have consequences in the state and derives
> substantial revenue from interstate or international commerce[.]

C.P.L.R. § 302(a)(3). For Section 302(a)(3) to apply, the alleged tortious act must have "caused

injury within New York." *Troma Ent., Inc. v. Centennial Pics. Inc.*, 729 F.3d 215, 218 (2d Cir.

2013) (internal references omitted). Pursuant to Section 302(a)(3), courts apply a "situs-of-

injury test, which asks them to locate the original event which caused the injury." *Bank Brussels*

*Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (internal references

omitted). "It is well-settled that residence or domicile of the injured party within New York is

not a sufficient predicate for jurisdiction under section 302(a)(3)." *Troma Ent., Inc.*, 729 F.3d at 218 (internal references omitted).

The only injuries alleged in the Second Amended Complaint are financial harms, namely the diversion of revenue from Plaintiff and the costs to Plaintiff from compensating a faithless employee. *See* SAC ¶¶ 116, 118. "The situs of such a nonphysical commercial injury is the place where the critical events associated with the dispute took place and not where the resultant monetary loss occurred." *Ballon Stoll P.C. v. Cutler*, No. 23-CV-00366 (ER), 2024 WL 1256049, at *9 (S.D.N.Y. Mar. 25, 2024) (internal references omitted). While "harm to a business in the New York market through lost sales or lost customers" may meet the requirement of injury in the forum state, *Energy Brands Inc.*, 571 F. Supp. 2d at 467 (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997)), "those lost sales must be in the New York market, and those lost customers must be New York customers." *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008).

The Second Amended Complaint does not include any allegations establishing New York as the location of the critical events leading to Plaintiff's alleged injury. Nor does it offer allegations that Plaintiff lost business in New York from New York customers. Plaintiff has therefore not sufficiently pleaded injury in New York, in either the First or Second Amended Complaint. Plaintiff counters that jurisdiction is proper because Premium Partners "could reasonably expect its misconduct to cause injury to [Plaintiff] in New York." Dkt. No. 77 at 10 n.16. Plaintiff misapprehends the statute. A defendant's expectation that an act will have consequences in New York is not a basis for alleging that the defendant has in fact caused an injury in New York. Rather, as provided in C.P.L.R. § 302(a)(3)(ii), the defendant's expectation

of consequences in New York is one of two alternative *additional* requirements that must be met before jurisdiction can be asserted based on injury in New York.  (The other is that the non-domiciliary regularly does business in New York, which Plaintiff does not allege.).  *See* C.P.L.R. §§ 302(a)(3)(i)–(ii).  Plaintiff fails to plead injury in New York in the first place, so the Court need not reach the secondary requirements in Section 302(a)(3)(ii).  In any case, Plaintiff also fails the additional requirement under Section 302(a)(3)(ii) because it does not adequately allege that Premium Partners derives substantial revenue from interstate or international commerce. *See* C.P.L.R. § 302(a)(3)(ii) (providing for jurisdiction in New York over a non-domiciliary who causes harm in New York and who "expects or should reasonably expect the act to have consequences in the state *and derives substantial revenue from interstate or international commerce*.") (emphasis added).

For the reasons stated, Plaintiff has not met its burden of establishing personal jurisdiction as to Premium Partners.  The Second Amended Complaint's fourth cause of action, alleging Premium Partners' aided and abetted Deutsch's breach of the duty of loyalty, is dismissed and leave to amend as to that claim is denied.

### C.  The Breach of Contract Claims Largely Survive

To plead a cause of action for breach of contract under New York law, a plaintiff must allege that: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages."  *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (internal citations omitted); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018).  The parties dispute the third and fourth elements.  The Court finds that Plaintiff has adequately pleaded a breach of contract, but only as to a subset of the various separable claims contained in its single cause of action.

### 1.     The Court Considers Only the Contracts Alleged in the Second Amended Complaint

As an initial matter, Deutsch argues that Plaintiff has not pleaded breach of the operative contracts.  Rather than the 2022 Offer Letter and Agreement, Deutsch contends that the operative contracts are some other agreement(s) associated with Plaintiff's 2023 decision to alter her compensation.  But those purported agreements are not properly before the Court on a motion to dismiss.  In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to the face of the complaint, "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Plaintiff bases its complaint on the 2022 Agreement and Offer Letter and does not incorporate or rely on the purported 2023 agreements. *See* SAC ¶ 79 ('The terms and conditions of Deutsch's employment were set forth in the Offer Letter agreement dated April 12, 2022.").  Thus, regardless of any dispute over which contracts in fact control, the Court will consider only the 2022 Agreement and Offer Letter for the purposes of this motion to dismiss.  *See First Solar, Inc. v. Absolute Process Instruments, Inc.*, No. 17-CV-08518 (JSR), 2018 WL 1166632, at *4 (S.D.N.Y. Feb. 8, 2018) ("It may be that [other agreements] control, but that question is not now before the Court.").

### 2.     The Second Amended Complaint Sufficiently Alleges Breach of the Agreement

Plaintiff advances multiple interrelated bases for breach, alleging that Deutsch breached the terms of the Offer Letter and Agreement by "generally not performing work responsibilities for significant periods while a full-time employee" of Plaintiff, creating and operating Premium Partners "to compete with Plaintiff and to escape and evade her contractual obligations with Plaintiff by working for clients that she could and should have directed to Plaintiff as part of her

obligations to [Plaintiff]," and "using [Plaintiff's] resources and Confidential Information for her own benefit to pursue and perform business opportunities with Premium Partners while a Gravitas employee." SAC ¶¶ 84–86.

"To state a claim for breach of contract, 'the claimant must allege the specific provisions of the contract upon which the breach of contract claim is based.'" *Khen v. US Coachways, Inc.*, No. 23-CV-10762 (JLR), 2025 WL 252901, at *9 (S.D.N.Y. Jan. 21, 2025) (quoting *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009)). Although the Second Amended Complaint alleges broad and sweeping bases for breach, the specific contractual provisions that were allegedly breached are fairly narrow. The Second Amended Complaint specifies two principal provisions of the Agreement that Deutsch violated: a prohibition on Deutsch's personal use or disclosure of confidential information belonging to Plaintiff ("Confidentiality Provision"), and a prohibition on communication with or solicitation of Plaintiff's clients for Deutsch's personal benefit ("Communication Provision"). *See* SAC ¶¶ 21–23.

### i. The Breach of Contract Claim is Dismissed to the Extent It Relies on Breaches of Unspecified Contractual Provisions or Malfeasance/Nonfeasance Under an Employment Contract

While some of Plaintiff's specific theories of breach are linked to the cited contractual provisions—such as its claims that Deutsch emailed confidential Gravitas files to her personal email and that she solicited business from an alleged Gravitas client—the bulk of its claims are not. Nowhere does the Second Amended Complaint allege the specific contractual provisions that were violated by Deutsch's other activities that allegedly constituted breach of contract, such as her failure to fulfill work responsibilities, her creation of Premium Partners, or her undertaking business that competed with Plaintiff. Those activities may very well have breached some other obligation to Plaintiff, such as the duty of loyalty as alleged elsewhere in the Second

Amended Complaint, but the Second Amended Complaint does not sufficiently allege that they violated a *contractual* obligation. As such, those general allegations cannot state a claim for breach of contract.

Moreover, to the extent that Plaintiff seeks to plead a breach of contract based solely on allegations that Deutsch "did not perform the duties and responsibilities assigned to her," SAC ¶¶ 72, 84, and that her nonperformance caused a financial injury to Plaintiff, that claim must fail. Section 193 of the New York Labor Law forbids employers from deducting pay from employees on account of their job performance. N.Y.L.L. § 193. "New York courts have construed this provision to preclude employers from pursuing damages based on an employee's negligence or poor job performance." *Grewal v. Cuneo*, No. 13-CV-06836 (RA), 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016). "To allow [an employer] the right to recover [damages] based upon [an employee's] alleged lack of performance would be permitting [the employer] to do indirectly and retroactively that which the law specifically prohibits it from doing directly." *Guepet v. Int'l Tao Sys., Inc.*, 443 N.Y.S.2d 321, 322–23 (N.Y. Sup. Ct. 1981). Rather, "[t]ermination is the only remedy available for an employer for malfeasance in job performance or breach of employment contract." *Lopez v. M & G Tapas Rest. Corp.*, No. 12-CV-02203 (PAC), 2013 WL 1100792, at *3 (S.D.N.Y. Mar. 18, 2013) (quoting *Farricker v. Pension Dev. Inc.*, No. 07-CV-11191, 2010 WL 845983, at *3 (S.D.N.Y. Mar. 4, 2010)).

Accordingly, the Court will disregard all allegations of breach of contract other than the specific allegations that Deutsch violated the Communication Provision and the Confidentiality Provision of the Agreement.

>       ii.    **The Second Amended Complaint Sufficiently Alleges that**
>              **Deutsch Breached the Communication Provision**

The Second Amended Complaint alleges that while Deutsch was employed by Plaintiff, she communicated with and solicited work from Plaintiff's clients on her own behalf and on behalf of Premium Partners, in violation of Section 1(b)(i) of the Agreement, the Communication Provision. *See* SAC ¶¶ 23, 59. Section 1(b)(i) provides that Deutsch may not "[f]or so long as she is employed by [Plaintiff] and for a period of twelve (12) months thereafter . . . Contact, Solicit (as each is herein defined), call upon, communicate with or attempt to communicate with . . . any of [Plaintiff's] Clients or Prospective Clients (as each is herein defined)." The Second Amended Complaint provides specific examples of allegedly improper communications that Deutsch had with Dalton and Inmar, both alleged to be Clients and/or Prospective Clients, as those terms are defined in the Agreement. *See* SAC ¶¶ 56, 59–72, 102. Defendants do not contest that the allegations of Deutsch's solicitations would state a claim for breach of contact if they involved Clients or Prospective Clients. Rather, they argue that Dalton and Inmar cannot be considered Clients or Prospective Clients. *See* Dkt. No. 73 at 24–25.

The Agreement defines a Client as "any Person that transacts business with [Plaintiff] within the twelve (12) month period immediately prior to the date upon which [Deutsch's] employment with [Plaintiff] terminates for any reason." SAC ¶ 23; SAC Ex. A § 2(b). It defines Prospective Client as "any Person with whom [Plaintiff] or any employee or independent contractor thereof has had Contact, directly or indirectly, within the twelve (12) month period immediately prior to the date upon which [Deutsch's] employment with [Plaintiff] terminates for any reason." SAC ¶ 23; SAC Ex. A § 2(f). The Second Amended Complaint alleges that Dalton was a Client based on her prior role as Interim Chief Human Resources Officer of a firm called WPG. On Dalton's recommendation, WPG engaged Plaintiff in June 2022 to assist with WPG's

search for a general counsel.  SAC ¶¶ 55–56.  The Second Amended Complaint further alleges

that Dalton regularly attended calls with Deutsch regarding the search for a general counsel until

WPG's engagement with Plaintiff ended in December 2022.  *Id.* ¶ 57.  Plaintiff therefore claims

that Dalton was a "Person that transacted business with [Plaintiff]" during the 12-month period

before the end of Deutsch's employment on October 18, 2023.

Plaintiff's theory of breach depends on the meaning of Client.  The parties essentially

dispute whether the definition of Client in the Agreement includes only the legal entity which

contractually engaged Plaintiff for work (here, WPG), or if it encompasses the individuals

associated with that entity who worked directly with Plaintiff to carry out the engagement (*e.g.*,

Dalton).  "For a defendant to prevail on a motion to dismiss for breach of contract, the contract

must unambiguously support the defendant's position." *Trireme Energy Dev., LLC v. RWE

Renewables Ams., LLC*, No. 22-CV-07439 (JLR), 2023 WL 5469662, at *12 (S.D.N.Y. Aug. 24,

2023).  While courts "are not obliged to accept the allegations of the complaint as to how to

construe a contract," they "should resolve any contractual ambiguities in favor of the plaintiff on

a motion to dismiss." *Id.* (internal references omitted); *see also Eternity Glob. Master Fund Ltd.

v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("[I]f a contract is ambiguous

as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for

failure to state a claim.").  At this stage, therefore, the question of whether Dalton is a Client

must be resolved in Gravitas' favor.  Not so as to Inmar, however.  The Second Amended

Complaint does not allege that Plaintiff ever transacted business with Inmar, and Plaintiff makes

no attempt whatsoever to argue that Inmar constitutes a Prospective Client under the Agreement

(beyond simply stating that it does, in conclusory fashion).  In any case, the Second Amended

Complaint adequately alleges that Deutsch breached the Communication Provision of the Agreement based on her communications with Dalton for her own benefit.

### iii. The Second Amended Complaint Sufficiently Alleges that Deutsch Breached the Confidentiality Provision

The Second Amended Complaint also alleges that Deutsch misappropriated confidential material belonging to Plaintiff, in violation of Section 1(a) of the Agreement, the Confidentiality Provision.  That section states that Deutsch "shall not use for her own benefit, or directly or indirectly, disclose, divulge, produce, publish, copy, permit access to, or in any way reproduce . . . any Confidential Information . . . excepting only such information as is at the time generally known to the public[.]"  SAC ¶ 21; SAC Ex. A § 1(a).  Confidential Information is defined as "information . . . relating to the business affairs, proprietary information, trade secrets, technology, research and development data, know-how, market studies and forecasts, competitive analyses, pricing policies, agreements with and identities of clients, identities of candidates, marketing arrangement or commercial arrangements of [Plaintiff], or any other information relating to [Plaintiff's] business or the business of any Person with whom [Plaintiff] transacts business."  SAC ¶ 22; SAC Ex. A § 2(c).

The Second Amended Complaint specifically alleges that Deutsch made improper personal use of a particular piece of Confidential Information—the so-called WTW file, "a report prepared as a result of dedicated work which was contained in a file that was prepared and maintained by Plaintiff created for the purpose of fulfilling a confidential search assignment" for one of Plaintiff's clients.  SAC ¶ 41.  The Second Amended Complaint alleges that on October 9, 2023, Deutsch accessed the WTW file and sent it to her personal email account five days after receiving a job offer from Inmar.  *Id.* ¶¶ 42–43.  She then deleted the email from the sent folder in her Gravitas email account, which did not fit her typical course of conduct.  *Id.* ¶ 44.  At that

time, she was not performing work for Plaintiff that required use of the WTW file, and she had "no legitimate business reason" to email it to her personal email account. *Id.* ¶ 43. Meanwhile, Deutsch was already performing search-related work for Inmar. *Id.* ¶ 47. Taking these facts together, Plaintiff alleges that Deutsch misappropriated the WTW file "to derive an economic benefit for herself or others, including by approaching the candidates that Plaintiff had worked to identify and vet for its client." *Id.* ¶ 46.

The Second Amended Complaint also alleges that, under similar circumstances, Deutsch sent to her personal email account certain of Plaintiff's templates for client presentations and reports. *Id.* ¶ 48. Before emailing the files, Deutsch allegedly changed their filenames "so it appeared that it related to Gravitas work that she had been assigned," which Plaintiff claims was an effort by Deutsch to conceal her actions. *Id.* The Second Amended Complaint further alleges that Deutsch used the templates for herself and Premium Partners. *Id.*

Deutsch argues that she did not violate the Confidentiality Provision by emailing the WTW file to herself because the WTW file did not contain Confidential Information. The file contains professional and biographical information relating to certain individuals apparently identified by Plaintiff as candidates for a position at a client firm. *See* Reisbaum Decl. Ex. 3, Dkt. No. 57-1.[2] Pointing to screenshots of the LinkedIn profiles of those same individuals (Reisbaum Decl. Exs. 4–8, Dkt. Nos. 59-3–59-7), Defendants contend that the WTW file merely reproduces publicly available information.

The parties dispute whether the Court may properly consider the LinkedIn screenshots on a motion to dismiss, but even assuming that the WTW file does simply copy information from public sources, the Second Amended Complaint still adequately alleges that the WTW file

---

[2] The Court granted Defendants leave to file the WTW file under seal. *See* Dkt. Nos. 19 & 60.

constitutes Confidential Information because it reveals Plaintiff's identification of particular candidates and collection of relevant information about them. *See* SAC ¶¶ 41, 46; SAC Ex. A § 2(c) ("'Confidential Information' shall mean . . . identities of candidates . . . or any other information relating to [Gravitas'] business[.]"). Because the Court must view the allegations in the light most favorable to Plaintiff at this stage, the Second Amended Complaint adequately pleads that the WTW file falls within the definition of Confidential Information.

Defendants also argue that the Second Amended Complaint does not plausibly allege that Deutsch used any Confidential Information for her own benefit. Whether she did is ultimately a question of fact that cannot be resolved on a motion to dismiss. As to the WTW file, the Second Amended Complaint plausibly alleges that Deutsch had no Gravitas-related business purpose for sending the materials to her personal email, that she was performing search-related work for Inmar when she sent the materials, and that she took steps to conceal her activity. At this stage, drawing all inferences in favor of the Plaintiff as required, the Court is satisfied that the allegations that Deutsch used the WTW file for her personal benefit are supported by more than speculation, and they are plausible on their face.

### 3. The Second Amended Complaint Sufficiently Alleges Damages

At the motion to dismiss stage, Plaintiff need only plead allegations from which damages attributable to Deutsch's breach might be reasonably inferred. *St. Christopher's, Inc. v. JMF Acquisitions, LLC*, No. 20-2308, 2021 WL 6122674, at *4 (2d Cir. Dec. 28, 2021) (summary order) (applying New York law). However, a mere "allegation that [a plaintiff] 'suffered damages' without particular facts as to how [it] was damaged does not satisfy *Twombly* and *Iqbal*." *Int'l Bus. Machines Corp. v. Dale*, No. 11-CV-00951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). The damages a plaintiff alleges "must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or

22

may follow from the breach of the contract." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (emphasis and internal references omitted) (applying New York law). "'Certainty', as it pertains to general damages, refers to the *fact* of damage, not the amount." *Id.* (emphasis in original)

The allegations in the Second Amended Complaint support a reasonable inference that Plaintiff suffered damages attributable to Deutsch's breach. As plausibly alleged, Deutsch's breach of the Communication and Confidentiality Provisions diverted business revenue from Plaintiff to Deutsch and Premium Partners. SAC ¶¶ 86–89. Moreover, although the Court finds that damages here are not too speculative to survive a motion to dismiss, "even where a plaintiff's allegations of actual damages in a contract action *are* too speculative, the plaintiff still 'would have plausible claims for nominal damages.'" *Nuveen Servs., LLC v. Fuller*, No. 23-CV-09942 (LTS) (GS), 2024 WL 4264864, at *12 (S.D.N.Y. Aug. 1, 2024) (emphasis added) (quoting *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015)). While Plaintiff does not affirmatively seek nominal damages, where a "complaint explicitly [seeks] compensatory damages," as Plaintiff does here, courts do "not preclude[ ] the award of nominal damages." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998). Either way, Plaintiff has sufficiently alleged damages, and the Second Amended Complaint states a claim for breach of contract.

### D. The Breach of the Covenant of Good Faith and Fair Dealing Claim Is Dismissed, but Will be Deemed Pled in the Alternative

Deutsch argues that Plaintiff's claim for breach of the covenant of good faith and fair dealing must be dismissed as duplicative of Plaintiff's breach of contract claim. Plaintiff responds that its good faith and fair dealing claim exists as an independent cause of action distinct from its breach of contract claims and should thus be sustained. The Court largely

agrees with Deutsch, but for the reasons below will allow Plaintiff to plead in the alternative a good faith and fair dealing claim based on Deutsch's communications with Dalton.

Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance. *See Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389–90 (1995). Although breach of this covenant may give rise to a claim of relief, *see Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998), there are limitations on its scope. The Second Circuit has indicated that it is the "intent and reasonable expectations" of parties entering into a given contract that fix the boundaries of the covenant of good faith and fair dealing, provided that those expectations are consistent with the express terms of the contract. *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989); *see also Dalton*, 87 N.Y.2d at 389. Hence, the purpose of the implied covenant of good faith is to further an agreement by protecting a promisee against breach "of the reasonable expectations and inferences otherwise derived from the agreement." *TVT Records & TVT Music, Inc. v. Island Def Jam Music Grp.*, 244 F. Supp. 2d 263, 278 (S.D.N.Y. 2003). Such protection cannot exist in the absence of an underlying valid contract. *See Alter v. Bogoricin*, No. 97-CV-00662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[T]he covenant of good faith and fair dealing is not distinct from the underlying contract[.]"); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304–05 (1983).

Accordingly, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Butvin v. DoubleClick Inc.*, No. 99-CV-04727 (JFK), 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001). Courts in this district have consistently dismissed claims for

breach of the implied covenant of good faith as "redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." *TVT*, 244 F. Supp. 2d at 277 (quoting *EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861 873 (S.D.N.Y. 2000)); *see also Alter*, 1997 WL 691332, at *7 ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative.").

Consequently, a breach of the implied covenant of good faith claim can survive a motion to dismiss "only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Siradas v. Chase Lincoln First Bank, N.A.*, No. 98-CV-04028 (RCC), 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999). However, "where the meaning of a contract is in doubt, courts allow a breach of contract claim and a breach of the implied covenant of good faith claim to be pleaded in the alternative." *Nuance Commc'ns, Inc. v. Int'l Bus. Machines Corp.*, 544 F. Supp. 3d 353, 373 (S.D.N.Y. 2021), *aff'd*, No. 21-1758-cv, 2022 WL 17747782 (2d Cir. Dec. 19, 2022). Alternative pleading is permitted in such circumstance because "[a] party is only precluded from *recovering* on both theories at the same time." *Fantozzi v. Axsys Techs., Inc.*, No. 07-CV-02667 (LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) (emphasis added).

With the exception of the allegation that Deutsch breached the implied covenant of good faith and fair dealing by "improperly us[ing] her position to contact [Plaintiff's] existing clients, including Dalton," SAC ¶ 102, the implied covenant claim must be dismissed because the facts that are offered in support of the claim are the same as those supporting the separate breach of contract claim. Plaintiff's good faith and fair dealing claim rests on allegations that Deutsch

failed to perform her responsibilities to Plaintiff, secretly pursued business for herself, solicited Plaintiff's clients, and improperly used Plaintiff's confidential materials for her own benefit. *Id.* ¶¶ 98–102. Those allegations are essentially identical to the allegations supporting Plaintiff's contract claim. *See id.* ¶¶ 84–89. Accordingly, the good faith and fair dealing claim must be dismissed as duplicative. *See generally Harris*, 310 F.3d at 81; *TVT*, 244 F. Supp. 2d at 277; *Alter*, 1997 WL 691332, at *7.

Plaintiff protests that Deutsch "cannot have it both ways" by securing dismissal of the good faith and fair dealing claim as duplicative given that the Court has decided that most of Plaintiff's allegations do not state a breach of contract claim, either. Dkt. No. 68 at 21. But the Court's determination that many of Plaintiff's general allegations fail to state a claim for breach of contract does not open a door for Plaintiff to repackage its allegations into a good faith and fair dealing claim. The implied covenant of good faith and fair dealing "does not add obligations beyond those set forth in the agreement; rather, it protects a party to a contract from improper conduct that 'subvert[s] the contract itself.'" *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (quoting *Butvin*, 2001 WL 228121, at *7); *see also Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08-CV-04341 (RJS), 2009 WL 1054830, at *5–6 (S.D.N.Y. Apr. 17, 2009) ("Significantly, although this implied covenant bars actions not 'expressly forbidden' by the contract but undertaken in bad faith, it does not 'operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits.'") (emphasis omitted) (quoting *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990)). The generalized allegations of breach of contract fail to state a claim because Plaintiff does not adequately plead a

connection between Deutsch's conduct and any contractual relationship with Plaintiff.  The analogous theories of breach of the implied covenant of good faith and fair dealing fail similarly because they simply do not state a claim (whether duplicative or not).  *See CIH Int'l Holdings, LLC v. BT United States, LLC*, 821 F. Supp. 2d 604, 615 n.8 (S.D.N.Y. 2011) ("CIH is correct that under Federal Rule of Civil Procedure 8(a), CIH may plead in the alternative; it has simply failed to allege facts sufficient to state a claim for breach of the implied duty.").

The only allegations that state a claim for breach of the implied covenant of good faith and fair dealing are those regarding Deutsch's solicitation of Dalton as a customer for Premium Partners.  As discussed above, whether Deutsch's conduct breached the express terms of the Agreement depends on whether Dalton was a Client within the meaning of the Agreement.  The parties vigorously dispute this issue.  "A party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts, but where, as here, there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018).  The good faith and fair dealing claim is not expressly pleaded in the alternative in the Second Amended Complaint, but the Court will construe it as such and the case will be governed by that construction going forward.  *See Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-07061 (NSR), 2016 WL 8650462, at *10 (S.D.N.Y. Feb. 5, 2016) ("Although Plaintiffs did not expressly state that they pled unjust enrichment as an alternative theory of recovery, such a pleading is not required, and the Court construes this Count as pled in the alternative.").

Therefore, the Second Amended Complaint's second cause of action is dismissed as a stand-alone claim, and leave to amend is denied, except that the Court will deem the claim pled

in the alternative and based solely on Deutsch's solicitation of Dalton as a potential customer of Premium Partners.

### E.  The Breach of the Duty of Loyalty Claim is Adequately Pled

Plaintiff styles its third cause of action as "Breach of Duty of Loyalty/Faithless Servant Doctrine."  SAC ¶ 106.  "New York courts are far from clear regarding the contours of—and interplay between—a claim for breach of fiduciary duty and the faithless servant doctrine."  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020).  Some courts applying New York law have analyzed claims for breach of the duty of loyalty and claims brought under the faithless servant doctrine as doctrinally distinct, while others have understood them to be essentially the same.  *Ebel v. G/O Media, Inc.*, No. 20-CV-07483 (PAE), 2021 WL 2037867, at *4 (S.D.N.Y. May 21, 2021).  Here, where both parties treat the claims as the same, the Court will analyze this cause of action as a single claim for breach of the duty of loyalty, brought under the faithless servant doctrine.  Plaintiff has adequately pleaded such a claim.

Under the duty of loyalty, "an agent is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'"  *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977)).  "A breach of the duty of loyalty 'occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicitation of [an] employer's customers before cessation of employment, conspiracy to bring about mass resignation of an employer's key employees, or usurpation of the employer's business opportunity.'"  *Regency NYC, Inc. v. Atkinson*, No. 23-CV-05479 (JGLC), 2024 WL 4337486, at *6 (S.D.N.Y. Sept. 27, 2024) (quoting *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013)).  "Under the

faithless servant doctrine, one who owes a duty of fidelity to a principal and who is faithless in the performance of her services is generally disentitled to recover her compensation, whether commissions or salary." *LifeSci Cap. LLC v. Revelation Biosciences, Inc.*, No. 22-CV-01411 (JGLC), 2024 WL 3634709, at *2 (S.D.N.Y. Aug. 1, 2024) (quoting *Doe v. Solera Cap. LLC*, No. 18-CV-01769 (ER), 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019)). "Courts in the Circuit have limited the faithless servant doctrine 'to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks.'" *Id.* at *3 (quoting *Stefanovic v. Old Heidelberg Corp.*, No. 18-CV-02093 (LTS), 2022 WL 3928370, at *7 (S.D.N.Y. Aug. 31, 2022)).

Courts have yet to determine the extent of an employee's disloyalty that is required for an employer to recover under the faithless servant doctrine. "'New York courts have used two different standards to determine whether an employee's misbehavior warrants forfeiture,' and the New York Court of Appeals has not resolved which one applies in particular circumstances." *Yukos Cap. S.A.R.L.*, 977 F.3d at 237 (quoting *Phansalkar*, 344 F.3d at 201–02). Both standards derive from decisions of the New York Court of Appeals from the late nineteenth century. The first standard focuses on whether the agent's misconduct was substantial, such that isolated incidents of disloyalty are insufficient. *See Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885) (stating that that a disloyal employee forfeits promised compensation only when the "misconduct and unfaithfulness . . . substantially violates the contract of service."). The second standard provides that an agent is disloyal "if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment," regardless of whether the misconduct is substantial.

*Murray v. Beard*, 102 N.Y. 505, 508 (1886); *see also Robinson v. De Niro*, 739 F. Supp. 3d 33,

122 (S.D.N.Y. 2023) (the *Murray* standard "does not require that the misconduct be substantial

to justify forfeiture of compensation—even a single disloyal act may be sufficient.").  The

distinction between the two standards is irrelevant at this stage of the case because Plaintiff has

plausibly alleged breach of the duty of loyalty under the stricter *Turner* standard.  *See Khaldei v.*

*Kaspiev*, 135 F. Supp. 3d 70, 84 (S.D.N.Y. 2015) (finding it unnecessary to resolve the issue

because defendant was a faithless servant even under the more stringent standard).

      Plaintiff alleges that while Deutsch was a full-time employee of Plaintiff, she neglected

her work responsibilities and instead created Premium Partners, soliciting business for her own

benefit that should have been undertaken for the benefit of Plaintiff.  SAC ¶ 108.  To further her

personal business, she misappropriated confidential Plaintiff information and exploited

Plaintiff's resources.  *Id.* ¶¶ 102, 111.  Far more than an isolated incident, Deutsch's misconduct

extended for months and substantially interfered with her obligations to Plaintiff.  *Id.* ¶¶ 28–29,

63, 69, 115.  Therefore, taking the allegations as true and drawing all inferences in favor of

Plaintiff, the Second Amended Complaint states a claim for breach of the duty of loyalty under

the faithless servant doctrine, even under the more stringent *Turner* standard.  *Cf. Johnson v.*

*Summit Acquisitions, LLC*, No. 15-CV-01193 (LEK) (ATB), 2019 WL 1427273, at *10

(N.D.N.Y. Mar. 29, 2019) (denying summary judgment where "a jury could well find disloyalty

permeating [an employee's] duties, on the basis that [the employee] 'lessened' and 'neglected'

his duties for [his employer] while engaging in competition"); *compare Maritime Fish Prods.*

*Inc. v. World-Wide Fish Prods., Inc.,* 100 A.D.2d 81, 88 (1st Dep't 1984) (duty of loyalty

breached where employee "surreptitiously organized a competing corporation, corrupted a fellow

employee, and secretly pursued and profited from one or more opportunities properly belonging

to his employer"), *with Schwartz v. Leonard*, 138 A.D.2d 692, 693 (2d Dep't 1988) (duty of

loyalty not breached where employee had secretly removed the employer's files to begin his own

business but in so doing did not "neglect[]" his work or "further[] his own interest at the expense

of" his employer).

Deutsch vigorously contests whether her business activities competed with Plaintiff,

arguing that the services she provided through Premium Partners did not overlap with the

services offered by her employer.  But her arguments raise a factual issue that is inappropriate to

resolve on a motion to dismiss, where Plaintiff plausibly asserts otherwise.  At this stage,

Plaintiff need only plausibly state a claim, and such claims will not be dismissed based on

arguments that are effectively a challenge to the proof offered by Plaintiff.

### F.  The Aiding and Abetting Claims Are Dismissed

The only cause of action against Defendant Inmar in the Second Amended Complaint is

for aiding and abetting the breach of fiduciary duty under New York law.   Plaintiff claims that

Inmar aided and abetted Deutsch's breach of the duty of loyalty because it knew, through its

agent Dalton, that Deutsch was Plaintiff's employee and yet it engaged her to independently

provide services that competed with Plaintiff's business.  SAC ¶ 141.  Plaintiff further alleges

that the engagement of Deutsch allowed Inmar to reduce its costs by "cutting out the

middleman—the middleman being [Plaintiff]."  *Id.*

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege:

"(1) a breach of fiduciary obligations to another of which the aider and abettor had actual

knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff

suffered actual damages as a result of the breach."  *Kottler v. Deutsche Bank AG*, 607 F. Supp.

2d 447, 466 (S.D.N.Y. 2009) (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005)).

The Second Amended Complaint fails to sufficiently allege the first two elements—actual knowledge and knowing participation—and accordingly this claim must be dismissed.

"Actual knowledge is required to impose liability on an aider and abettor." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (internal references omitted). "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." *Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536, 549 (S.D.N.Y. 2007) (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007)). "Actual knowledge must be distinguished from constructive knowledge, which is the knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Deutsche Bank Tr. Co. Ams. v. Rado Ltd. P'ship*, No. 18-CV-06768 (DLC), 2019 WL 1863272, at *7 (S.D.N.Y. Apr. 25, 2019) (internal references omitted); *see also Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) ("Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability."); *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("New York common law . . . has not adopted a constructive knowledge standard for imposing aiding and abetting liability. Rather, New York courts and federal courts in this district, have required actual knowledge.").

Beyond actual knowledge, an aider and abettor must have also "knowingly induced or participated in the breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Kaufman*, 307 A.D.2d at 126. Substantial assistance "requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Batson v. RIM San Antonio Acquisition,*

*LLC*, No. 15-CV-07576 (ALC), 2018 WL 1581675, at *11 (S.D.N.Y. Mar. 27, 2018) (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018)).  Such "[s]ubstantial assistance 'occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'"  *Id.* (quoting *SPV Osus Ltd.*, 882 F.3d at 345).

The Second Amended Complaint plausibly alleges that Dalton knew Deutsch was a Gravitas employee, but it gets no further.  Beyond knowledge of Deutsch's employment by Plaintiff and the general fiduciary duties attendant to that relationship, Plaintiff must allege Inmar's knowledge that Deutsch breached those fiduciary duties *and* Inmar's knowing participation in the breach.  *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 256 (S.D.N.Y. 2013) (even assuming knowledge of fiduciary relationship was adequately alleged, aiding and abetting claim failed because actual knowledge and substantial assistance were not adequately alleged). The Second Amended Complaint's allegations on those elements are sparse, conclusory, and ultimately insufficient.  The pertinent allegations include:

- Dalton, while employed by WPG, previously worked with Deutsch and Plaintiff on an executive search project, SAC ¶ 57;

- Dalton, and therefore Inmar, knew Deutsch was an employee of Plaintiff, and knew that Deutsch owed a fiduciary duty to Plaintiff, *id.* ¶¶ 57, 62, 73;

- Dalton and Deutsch had "secret conversations" while Deutsch was an employee of Plaintiff, *id.* ¶¶ 59–60;

- Deutsch began "secretly" working on consulting and recruiting projects for Inmar while Dalton knew Deutsch was an employee of Plaintiff, *id.* ¶ 61;

- Dalton "knew . . . or should have known" that those consulting and recruiting projects "were in conflict, or likely in conflict with," the duties that Deutsch owed to Plaintiff, *id.* ¶ 74;

- Inmar paid fees to Deutsch that were substantially less than the fees that Plaintiff would have charged for similar services, *id.* ¶ 64; and

- Dalton and Inmar benefited by cutting out Plaintiff and engaging Deutsch/Premium Partners directly, *id.* ¶¶ 64, 77, 131.

These allegations barely support an inference that Inmar had *constructive* knowledge of Deutsch's breach, and they offer no support whatsoever as to *actual* knowledge. Indeed, some of the allegations reveal their deficiencies on their face. *See, e.g., id.* ¶ 74 ("Dalton knew, and therefore Inmar knew, <u>or should have known</u>, that the recruiting and consulting activities that Inmar was engaging Deutsch and/or Premium Partners to perform were in conflict with <u>or likely were in conflict with</u>, duties Deutsch owed to her employer, Plaintiff.") (emphasis added). The assertion that Dalton knew Deutsch was violating her duties to Plaintiff—which rests on the unsupported assumption that Dalton knew Deutsch was providing services that competed with Plaintiff and that doing so was improper under whatever arrangement existed between that employee and her employer—is mere speculation, based only on an allegation that Dalton once worked with Deutsch and Plaintiff on an entirely unrelated project at a different company.

As for knowing participation and substantial assistance, the only affirmative acts alleged in the Second Amended Complaint involve Inmar simply hiring Deutsch for services, which cannot plausibly give rise to the inference that it knowingly participated in whatever breaches Deutsch may have committed. *See Kaufman*, 307 A.D.2d at 126 ("As an initial matter, assisting [the primary tortfeasor] in reacquiring an interest in the Falchi Building, not an unusual activity

for those in the business of commercial real estate development, hardly constitutes assisting in a breach of fiduciary duty by itself.").  Plaintiff conjures ideas of a clandestine effort by Inmar to reduce its costs by inducing Deutsch to undercut her own employer.  But stripped of Plaintiff's characterizations, the Second Amended Complaint alleges little more than Inmar's participation in routine business activities with an outside service provider.  This is not enough to state a claim under the governing law.

Because the Second Amended Complaint fails to plead Inmar's actual knowledge of and knowing participation in Deutsch's breach of her duty of loyalty, the fourth cause of action is dismissed, and leave to amend is denied.

### G.  Service on Deutsch was Improper but Can be Corrected

Finally, Deutsch contends that Plaintiff failed to properly serve her because it resorted to "nail and mail" service without exercising due diligence in its attempts to serve her personally.  Although the Court agrees that service was improper, it will grant an extension of the time for Plaintiff to properly serve Deutsch.

Federal Rule of Civil Procedure 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  Applicable New York law provides that individuals may be served by delivering a summons to the person to be served, or by delivering a summons to a suitable person as defined by statute, along with mailing the summons to the person's last known residence or actual place of business.  C.P.L.R. § 308(1)–(2).  If neither of these methods of personal service is possible, the process server may use "nail and mail" service, which involves affixing the summons to the place of business or residence of the person to be served and mailing the summons to that individual.  *Id.* § 308(4).

"Nail and mail" service is permitted only if personal service cannot be accomplished "with due diligence." *Id.* "The due diligence requirement of C.P.L.R. 308(4) should be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (quotations omitted). "Although New York has not formulated a hard and fast rule for what constitutes a showing of due diligence, case law has shaped a rough standard." *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 192 (E.D.N.Y. 2025) (internal references omitted). Courts make the due diligence determination "on a case by case basis after considering the totality of the circumstances," with emphasis on the "quality" of the process server's efforts. *Id.* (internal references omitted). New York courts have generally required "approximately three attempts at service, optimally on non-consecutive days." *Weifang Xinli Plastic Prods. v. JBM Trading Inc.*, No. 11-CV-02710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014), *aff'd sub nom. Weifang Xinli Plastic Prods. Co. v. JBM Trading Inc.*, 583 F. App'x 24 (2d Cir. 2014)). The attempts should be made "during times when the defendant could be reasonably expected to be found at their actual place of business, dwelling place, or usual place of abode." *Veeraswamy*, 765 F. Supp. 3d at 192 (internal references omitted); *see also Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 676 (S.D.N.Y. 2003). (noting that courts examine whether the process server "attempted service during various days and times—before and after working hours, weekdays and weekends or holidays—when defendant may be reasonably expected to be found at home").

Here, Plaintiff's process server attempted to personally serve Deutsch at her New Jersey home on three separate days: twice on Monday, February 26, 2024 (at 5:38 p.m. and 7:03 p.m.), once on Wednesday, February 28, 2024 (at 7:56 a.m.), and once on Thursday, February 29 (at 2:08 p.m.). *See* Dkt. No. 1-6. On February 26, the process server received no answer at the

intercom for Deutsch's apartment building. *Id.* On February 28, the process server spoke over the intercom with Deutsch (apparently remotely), who said she was in North Carolina and would be back "next Saturday." *Id.* The next day, on February 29, the process server affixed the summons, complaint, and other papers to Deutsch's door after receiving no answer at the intercom. *Id.*

Finding Plaintiff's three unsuccessful attempts at personal service sufficient for purposes of § 308(4) would weight quantity of attempts over quality, an approach that courts in New York have repeatedly rejected. *See Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 261 (E.D.N.Y. 2011) ("When determining whether the process server's actions constitute due diligence, courts should not focus on the quantity of the attempts at personal delivery, but on their quality."); *Sartor*, 260 F. Supp. at 677 ("[T]he due diligence requirement refers to the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency.") (quoting *Barnes v. City of New York*, 70 A.D.2d 580, 580 (2d Dep't 1979), *aff'd*, 51 N.Y.2d 906 (1980)). On February 28, 2024, (a Wednesday) Deutsch answered her residential intercom (apparently remotely—an increasingly common feature of residential buildings in the New York City area) and told the process server that she would not be home until "next Saturday." The process server's attempt at service on the very next day was therefore not made at a time when Deutsch "may be reasonably expected to be found at home"—indeed, it was made at a time when it was fully expected that she would not be. That does not satisfy the due diligence requirement. *See Arena Special Opportunities Fund, LLC v. McDermott*, 80 Misc. 3d 1221(A), 2023 N.Y. Slip Op. 51052(U), at *1 (N.Y. Sup. Ct. 2023) ("If the defendant cannot reasonably be expected to be found at the location at which service was attempted, a plaintiff has not exercised due diligence."). And the two prior attempts do not suffice by themselves. *See Niebling v. Pioreck*,

222 A.D.3d 873, 875 (2d Dep't 2023) (finding due diligence was not exercised where plaintiff

made two attempts at service without inquiring about defendant's whereabouts).  Therefore, the

Court finds that service on Deutsch was insufficient.

       If there is insufficient service of process, a complaint may be dismissed.  *Howard v.*

*Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844

(2d Cir. 1999).  However, "dismissal is not invariably required."  *Aries Ventures Ltd. v. Axa Fin.*

*S.A.*, 729 F. Supp. 289, 303 (S.D.N.Y. 1990); *see also Grammenos v. Lemos,* 457 F.2d 1067,

1071 (2d Cir. 1972) ("[T]he fact of invalidity of the one attempt at service does not automatically

require dismissal of the complaint . . . . [T]he court has power, under Fed. R. Civ. P. 4(a), if the

service is invalid or improper, to cause additional or new summons to be issued and good service

attempted.").  Even in the absence of a showing by the plaintiff of good cause for the failure to

properly effect service, a court retains discretion to grant an extension of the time to serve the

defendant.  *Fantozzi v. City of New York*, 343 F.R.D. 19, 26 (S.D.N.Y. 2022).  "Factors relevant

to the exercise of this discretion include, *inter alia*, the relative prejudice to the parties (including

whether the action would be barred by the statute of limitations and whether defendant had

actual notice of the suit) and whether there is a 'justifiable excuse' for the failure properly to

serve."  *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order) (citing

*Zapata v. City of New York,* 502 F.3d 192, 197–99 (2d Cir. 2007)).

       After weighing the relevant considerations, the Court finds that an extension of time to

permit Plaintiff to properly serve Deutsch is merited.  Importantly, the risk of prejudice to

Deutsch is low.  Deutsch had notice of the suit, and her counsel received the Complaint and

summons and has briefed the merits of multiple motions to dismiss.  *See Romandette v. Weetabix*

*Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (noting that Rule 4 "is to be construed liberally to further

the purpose of finding personal jurisdiction in cases in which the party has received actual notice" and "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained.*") (emphasis in original) (internal references omitted).  Indeed, there is every reason to believe that Deutsch's counsel of record will accept service on her behalf, or that Deutsch will waive personal service upon receipt of a proper request to do so.  Furthermore, dismissal with prejudice would be unwarranted in light of this Circuit's "strong preference for deciding cases on the merits," *see Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 511 (S.D.N.Y. 2013) (internal references omitted), and dismissal without prejudice would cause unnecessary further delay to the proceedings and circumvent the Court's goal of the "efficient and expedient resolution of cases."  *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).


## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file the proposed Second Amended Complaint (Dkt. No. 64) is GRANTED IN PART AND DENIED IN PART, Deutsch's and Premium Partners' motion to dismiss (Dkt. No. 55) is GRANTED IN PART AND DENIED IN PART and Inmar's motion to dismiss (Dkt. No. 51) is GRANTED.  The Clerk of Court is respectfully directed to terminate Inmar from this action.

Within 30 days of the date of this Order, Plaintiff shall file a new Second Amended Complaint that strictly complies with the directives set forth above and does not introduce new

claims or material.  Plaintiff shall effect proper service on Defendant Deutsch within 30 days

thereafter.


Dated:  August 6, 2025
          New York, New York


                              SO ORDERED.


                              _____
                              MARGARET M. GARNETT
                              United States District Judge