USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRAVITAS SEARCH PARTNERS LLC,

Plaintiff,

-against-

JENNIFER A. DEUTSCH,

Defendant.

24-CV-02683 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Gravitas Search Partners LLC ("Plaintiff") asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the duty of loyalty against its former employee, Jennifer A. Deutsch ("Deutsch"), in connection with allegations that Deutsch abused her relationship with Plaintiff to pursue a competing side business. Deutsch again moves to dismiss the action pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficient service of process. For the reasons that follow, the motion is DENIED.

## BACKGROUND

The Court incorporates by reference the Opinion and Order issued on August 6, 2025 (the "Opinion & Order"), which provides a comprehensive summary of this case's factual background and procedural history. *See* Dkt. No. 79. To briefly summarize, Plaintiff initially filed a complaint in state court on February 15, 2024. Dkt. No. 1-2. Plaintiff purported to have served Deutsch on February 29, 2024. Dkt. No. 1-6. Deutsch removed the case to this Court on April 9, 2024, and moved to dismiss the original complaint one week later. Dkt. Nos. 1, 12. In response, Plaintiff filed the First Amended Complaint, which added new claims and named as defendants two business entities associated with Deutsch. Dkt. No. 29. Deutsch and the

business entities then moved to dismiss the First Amended Complaint, and Plaintiff cross-moved for leave to file a Second Amended Complaint. Dkt. Nos. 51, 55, 64.

In the Opinion & Order, the Court dismissed all of Plaintiff's claims against the two business entities and substantially narrowed the claims against Deutsch. Dkt. No. 79. The Court granted Plaintiff limited leave to file a Second Amended Complaint, excluding any proposed amendments that the Opinion & Order had identified as futile. The Court also found that Plaintiff had failed to properly serve Deutsch in February 2024, but rather than dismiss the action for insufficient service of process, the Court granted additional time for Plaintiff to attempt proper service. *Id.* at 39–40.

Plaintiff filed the Second Amended Complaint on September 5, 2025. *See* Dkt. No. 80. It filed an affirmation of service on October 9, 2025, purporting to have served Deutsch with the Summons and Second Amended Complaint on October 2, 2025, via substitute service at Deutsch's place of business, and on October 8, 2025, via nail-and-mail service at Deutsch's residence. *See* Dkt. No. 84. Deutsh moved to dismiss the Second Amended Complaint on October 20, 2025, arguing that Plaintiff failed to properly and timely effectuate service in accordance with the directives in the Opinion & Order.

Plaintiff subsequently filed two motions to amend its affirmation of service to adjust the date of the purported nail-and-mail service to October 3, 2025, among other corrections, all of which are attributable to obvious clerical errors. *See* Dkt. Nos. 92, 93, 94 and exhibits thereto. As a preliminary matter, Plaintiff's motions to file amended affirmations of service (Dkt. Nos. 92–93) are GRANTED, and the Court relies on the amended filings in deciding the instant motion.

## DISCUSSION

Plaintiff purports to have served Deutsch via two methods: (1) substitute service at Deutsch's place of business in New York pursuant to CPLR § 308(2); and (2) nail-and-mail service at Deutsch's residence in New Jersey pursuant to CPLR § 308(4)..[1] Deutsch argues that service under both methods was defective, and even if it was not, Plaintiff failed to complete such service within 30 days of filing the Second Amended Complaint, as prescribed by the Court. Because the Court finds that Plaintiff timely and properly served Deutsch under Section 308(4), it will not address Plaintiff's attempts to serve Deutsch under Section 308(2).

### I. LEGAL STANDARD

Rule 12(b)(5) of the Federal Rules of Civil Procedure provides for dismissal of an action on grounds of insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). When a defendant challenges service of process, "the plaintiff bears the burden of establishing that service was sufficient." *Dwulit v. Tactical, Scrapefix & Deer Mgmt. Sys. LLC*, No. 23-CV-08778 (JGLC), 2024 WL 3413472, at *2 (S.D.N.Y. July 15, 2024) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010))..[2] "In considering a motion to dismiss pursuant to Rule 12(b)(5), the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Kumar v. Alhunaif*, No. 23-CV-00321 (DEH), 2025 WL 833547, at *3 (S.D.N.Y. Mar. 17, 2025) (quoting *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021)).

[1] By its text, Section 308 applies only to service within the state, but Section 313 incorporates Section 308 and provides that the same rules apply to service on an individual outside of the state, so long as that individual is otherwise subject to jurisdiction in the state. *See* CPLR § 313; *Bozza v. Love*, No. 15-CV-00271 (LGS), 2015 WL 4039849 at *1 (S.D.N.Y. Jul. 1, 2015).

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

"A process server's sworn statement of service creates a presumption that service has been effectuated." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013). "But this presumption can be rebutted by a defendant's sworn denial of service, provided that the defendant swears to specific facts contradicting those in the affidavit of service." *Goldman v. Weisman*, No. 23-CV-09602 (ER), 2025 WL 448328, at *2 (S.D.N.Y. Feb. 10, 2025). In general, a court must conduct an evidentiary hearing "to resolve conflicting affidavits regarding service of process." *Hudson Priv. LP v. Creative Wealth Media Fin. Corp.*, 629 F. Supp. 3d 237, 242 (S.D.N.Y. 2022). However, "[n]o evidentiary hearing is required if the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Hicks v. Leslie Feely Fine Art, LLC*, No. 20-CV-01991 (ER), 2021 WL 982298, at *6 (S.D.N.Y. Mar. 16, 2021) (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 58 (2d Cir. 2002)).

## II. PLAINTIFF'S SERVICE IS VALID

Plaintiff resorted to nail-and-mail service under CPLR Section 308(4) after unsuccessfully attempting service by personal delivery at Deutsch's residence. Dkt. No. 94 ¶¶ 12–23. The facts surrounding the various attempts at service are provided in the sworn affidavit of Raymond Dash, Plaintiff's process server, dated October 2, 2025. *See* Dkt. No. 94-5 (the "First Dash Affidavit"). According to the First Dash Affidavit, Dash attempted to serve Deutsch at 92 Millburn Avenue, Unit 416, in Springfield, New Jersey, on five different days and times: (1) Monday, September 22, 2025, at 6:13 p.m.; (2) Tuesday, September 23, 2025, at 8:02 a.m.; (3) Wednesday, September 24, 2025, at 6:51 p.m.; (4) Saturday, September 27, 2025, at 7:56 a.m.; and (5) Wednesday, October 1, 2025, at 1:47 p.m. *Id.* at 1–2. Dash received no answer each time, either at Deutsch's door or at her intercom (on the one day he was not permitted access to her door). *Id.* He confirmed with a front desk employee that Deutsch lived

at the address. *Id.* at 1. On October 1, 2025, after the fifth failed attempt, Dash affixed the summons and complaint to Deutsch's apartment door. *Id.* at 2; *see also* Dkt. No. 94-8 at 8–10 (showing photographs of the affixed papers). Then, on October 3, 2025, Plaintiff's counsel sent the summons and complaint to Deutsch via first-class mail. Dkt. No. 94-9 ¶ 3.

**A. Service Under CPLR § 308(4) Was Proper**

Deutsch unconvincingly argues that nail-and-mail service was improper because Plaintiff did not exercise due diligence in its prior attempts to serve her via hand delivery. As the Court has previously explained, service under Section 308(4) is permitted only if service under Sections 308(1)–(2) cannot be accomplished with due diligence. Opinion & Order at 35–36. "Although New York has not formulated a hard and fast rule for what constitutes a showing of due diligence, case law has shaped a rough standard." *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 192 (E.D.N.Y. 2025). New York courts have generally required "approximately three attempts at service, optimally on non-consecutive days." *Weifang Xinli Plastic Prods. v. JBM Trading Inc.*, No. 11-CV-02710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014), *aff'd sub nom. Weifang Xinli Plastic Prods. Co. v. JBM Trading Inc.*, 583 F. App'x 24 (2d Cir. 2014). The attempts should be made "during times when the defendant could be reasonably expected to be found at their actual place of business, dwelling place, or usual place of abode." *Veeraswamy*, 765 F. Supp. 3d at 192; *see also Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 676 (S.D.N.Y. 2003) (noting that courts examine whether the process server "attempted service during various days and times—before and after working hours, weekdays and weekends or holidays—when defendant may be reasonably expected to be found at home"). Ultimately, courts determine due diligence "on a case by case basis after considering the totality of the circumstances," with emphasis on the "quality" of the process server's efforts. *Veeraswamy*, 765 F. Supp. 3d at 192.

### 1. Plaintiff Exercised the Requisite Diligence

Here, Plaintiff attempted service on four weekdays—covering the morning, afternoon, and evening hours—and made one additional attempt on a weekend morning. Because Dash confirmed Deutsch's residence with a front desk employee at the apartment building, his multiple service attempts at different times on different days easily satisfy Section 308(4)'s due diligence requirement. *See Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d Cir. 2018) (three weekday attempts satisfied due diligence where the process server confirmed the defendant's residence with a neighbor and made service attempts at 7:00 a.m., 10:20 a.m., and 6:55 p.m.); *Goodman v. Bouzy*, No. 21-CV-10878 (AT) (JLC), 2022 WL 16847284, at *6 (S.D.N.Y. Nov. 10, 2022), *report and recommendation adopted*, 2022 WL 17624872 (S.D.N.Y. Dec. 13, 2022) (two weekday attempts at 1:05 p.m. and 1:25 p.m. and one weekend attempt at 4:10 p.m. satisfied due diligence where the process server confirmed the defendant lived at the address); *Mondragon v. Keff*, No. 15-CV-02529 (JPO) (BCM), 2019 WL 2551536, at *3 n.3 (S.D.N.Y. May 31, 2019), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019) ("Here, the process server demonstrated the requisite due diligence by attempting personal service on [defendant] at different times on four different dates, and by speaking with [defendant's] neighbor to confirm that [defendant] lived at the address listed on the summons.").

Whether Plaintiff adequately attempted service at a separate place of business before resorting to nail-and-mail service at Deutsch's residence is inconsequential under the facts of this case. There is no clear consensus among courts as to whether service must be attempted at a defendant's place of business after attempts at the defendant's residence have failed. *Lask v. Rhee-Karn*, No. 24-CV-02666 (MMG), 2025 WL 2717474, at *5 (S.D.N.Y. Sept. 24, 2025). When considering the totality of the circumstances, courts weigh a failure to attempt service at a place of business most heavily when the defendant's place of business is known. *Id.* Here, the

Defendant's LinkedIn account states she is employed by "Inmar Intelligence" in the "New York City Metropolitan Area." Dkt. No. 92-1 at ¶ 5. Inmar's own website lists the address of its New York office, the process server delivered the Summons and Second Amended Complaint to that address, and was informed by a person of suitable age and discretion that Deutsch was employed there. *Id.* ¶¶ 6-8. Deutsch submitted a declaration in connection with her motion (after the service was attempted), stating that she generally works from home, and only "occasionally go[es] into a physical office." Dkt. No. 88 ("Deutsch Decl.") ¶ 2. Deutsch cannot have it both ways—either it was reasonable to serve her at Inmar's physical place of business or it was reasonable to serve her at home as her purported "actual place of business." *See Rosales v. Pepe's Rest Grp. LLC*, No. 25-CV-01744 (LJL), 2025 WL 1898601, at *3 (S.D.N.Y. July 9, 2025) ("New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business.").

Moreover, even if Deutsch had a separate place of business that was not either at Inmar's office or her home, Plaintiff attempted to serve her at home in the evening and on a weekend, when she was reasonably expected to be at home regardless. *See County of Nassau v. Gallagher,* 43 A.D.3d 972, 841 N.Y.S.2d 696, 697 (2d Dep't 2007) ("Where four attempts to serve the defendant at his residence included an attempt on a late weekday evening and an attempt on an early Saturday morning, it was not necessary that the plaintiff . . . attempt to serve the defendant at his workplace."). The fact that Deutsch may have been absent during some of these attempts (because, for example, she was walking her dogs, *see* Deutsch Decl. ¶¶ 5, 8) is irrelevant. A process server should be mindful of "the working habits of the defendant," *Goodman*, 2022 WL

16847284, at *6, but there is no obligation to divine every idiosyncrasy of a defendant's schedule. All circumstances considered, the Court finds that Plaintiff exercised due diligence before resorting to nail-and-mail service.

### 2. Deutsch Fails to Raise a Serious Factual Dispute as to the Propriety of Service

Deutsch does not dispute that she lives at the 92 Millburn Avenue address, nor does she convincingly rebut any of Plaintiff's statements regarding its attempts to serve her there..[3] However, in a declaration made under penalty of perjury, Deutsch offers supplementary facts that she contends invalidates Plaintiff's service of process. The relevant portion of her declaration states:

> On September 24, I saw that I had a missed call from my concierge. When I called downstairs, the concierge informed me that while I was out, someone had come to my building dressed as a police officer and claimed that he was there to "arrest" me. My concierge also informed me that, out of fear that he would be charged with obstruction of justice or some other attempt to impede law enforcement, he allowed the individual to go up to my apartment floor. I have since come to understand that this individual was Plaintiff's process server.

Deutsch Decl. ¶ 7. In response, Plaintiff submitted a second sworn affidavit of Raymond Dash, an experienced process server, who squarely denies that he engaged "in any such conduct" or otherwise used "trickery, disguises, or false statements to effect service." Dkt. No. 94-8 (the "Second Dash Affidavit") at 2. Deutsch's reply makes no mention of this issue, nor is there any identification of the concierge or any corroborating information for these hearsay statements (which the concierge had a self-serving motive to fabricate or embellish in any event, since he

[3] Deutsch states that she did not "see any papers" when she checked her door after hearing someone knocking on October 1, 2025. *See* Dkt. No. 88 ¶ 7. That carefully phrased statement suggests only that Deutsch did not immediately notice papers affixed to her door, not that papers were never affixed there or that she did not later find them.

was presumably not permitted to allow non-residents up to residential floors without the consent of the resident).

Even assuming for present purposes that a process server's use of unlawful or deceptive means during one service attempt necessarily invalidates otherwise proper service accomplished during another attempt, there is no genuine factual dispute requiring an evidentiary hearing to resolve. As noted above, Deutsch's reply does not even address, much less rebut, the very strong and credible Second Dash Affidavit on this issue. To the extent Deutsch wants the Court to rely on her earlier declaration, which pre-dates the Second Dash Affidavit, it contains only hearsay statements of an unidentified concierge, with no corroboration, and ample reason to question the secondhand account. *See* Dkt. No. 88 ¶ 7 (providing Deutsch's own summary of the concierge's unsupported after-the-fact explanation of why he had allowed a person to go to Deutsch's apartment door without her permission, as conveyed to her over a phone call). Taken together, this factual record does not create a need for an evidentiary hearing or seriously undermine Plaintiff's showing that service was proper. *See, e.g., United States v. Jost*, 9 F. Supp. 3d 303, 307 (W.D.N.Y. 2014) (denying Rule 12(b)(5) motion where "there [was] no sworn statement submitted contradicting the process server's affidavit" and "defendant's unsupported and uncorroborated statement [was] insufficient to overcome the sworn affidavit relied upon by plaintiff"); *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 58 (2d Cir. 2002) (holding that no hearing is required where no sworn facts create a real dispute regarding the propriety of service).

**B. Plaintiff Timely Served Deutsch**

Plaintiff's nail-and-mail service was thus proper, but Deutsch contends that it was nevertheless invalid because it was untimely. This argument is also unavailing.

The Opinion & Order directed Plaintiff to file a Second Amended Complaint within 30 days and ordered that "Plaintiff shall effect proper service on Defendant Deutsch within 30 days thereafter." Opinion & Order at 40. Plaintiff filed the Second Amended Complaint on September 5, 2025, Dkt. No. 80, meaning the deadline for service was Monday, October 6, 2025. As stated above, Plaintiff affixed the summons and complaint to Deutsch's door on October 1, 2025, and mailed the same to Plaintiff's apartment on October 3, 2025, in accordance with CPLR Section 308(4). However, as Deutsch points out, Plaintiff did not file proof of service until October 9, 2025. *See* Dkt. No. 84. Deutsch argues that, because the CPLR provides that nail-and-mail service only becomes "complete" ten days after the filing of the proof of service, any service of process was not legally effectuated until October 19, 2025, thirteen days after the Court-ordered deadline. *See* Dkt. No. 86 at 1.

With respect to nail-and-mail service, the CPLR provides in relevant part that "proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing." CPLR § 308(4). As emphasized by the parties' briefing, courts have not comprehensively resolved the significance of the provision that "service shall be complete ten days after such filing." *See Stop & Shop Supermarket Co. LLC v. Goldsmith*, No. 10-CV-03052 (KMK), 2011 WL 1236121, at *3 (S.D.N.Y. Mar. 31, 2011). The issue poses particularly difficult and consequential questions in cases where the propriety of federal subject matter jurisdiction depends on the timeliness of removal, which in turn depends on the date the removing party was served. *Compare Beter v. Baughman*, No. 24-CV-00079 (GHW) (RFT), 2024 WL 1333570, at *7 (S.D.N.Y. Mar. 13, 2024), *report and recommendation adopted*, 2024 WL 1329066 (S.D.N.Y. Mar. 28, 2024) (determining that service had not become "proper" for

purposes of the federal removal statute until ten days after the plaintiff filed the proof of service), *with Stan Winston Creatures, Inc. v. Toys 'R' Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) ("Federal court jurisdiction is not dependent on the technicality of New York state procedure requiring ten days after filing proof of service for service to be deemed 'complete.'").

Here, however, the parties overcomplicate the issue. Because the purported service was attempted *after* removal, the CPLR's "ten days" provision is inapplicable. The Federal Rules of Civil Procedure instead govern the timeliness of service, and those rules do not incorporate the CPLR's procedural requirements regarding the completion of service or the timing thereof.

It is generally true that "the propriety of service must be determined by reference to state law" in cases where a "plaintiff served process on the defendants prior to removal." *Paige v. City of New York*, No. 21-CV-11104 (JGK), 2023 WL 3122989, at *2 (S.D.N.Y. Apr. 27, 2023). But in cases where service is attempted after removal, the federal removal statute provides that the ordinary rules governing service of process in non-removed cases shall apply:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

28 U.S.C. § 1448. Those ordinarily applicable rules are the Federal Rules of Civil Procedure. *See Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 812 (2d Cir. 2022) ("[T]he Federal Rules of Civil Procedure . . . establish the general mode of serving process in federal courts."); *Sander v. Off. of Comptroller of Currency*, No. 15-CV-05879 (VSB), 2016 WL 11951030, at *5 (S.D.N.Y. Sept. 29, 2016) ("Where an action is removed to federal court before the plaintiff accomplishes service of the initial complaint, Rule 4 governs service of process.").

The attempted service at issue here occurred after Deutsch had already removed this case and successfully challenged Plaintiff's pre-removal service. Therefore, the Federal Rules of Civil Procedure, not the CPLR, govern Plaintiff's attempts at service. *See Futia v. Roberts*, No. 23-CV-01774 (VB), 2023 WL 8237246, at *7 (S.D.N.Y. Nov. 28, 2023) ("28 U.S.C. § 1448 enables parties to cure deficiencies with the original service, after an action is removed from state to federal court, by re-serving defendants consistent with Federal Rule of Civil Procedure 4."). The distinction is subtle and not always significant, given that Rule 4(e)(1) provides that a person may be served "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). But by authorizing the *methods* of service prescribed by state law, Rule(e)(1) does not necessarily relinquish federal authority over the *effect* of service in federal cases. Therefore, the Court cannot assume that every procedural intricacy of the CPLR must apply to this federal case.

Indeed, the Second Circuit has already held that the Federal Rules do not "import the New York proof of service rigamarole" whereby service is not "complete" until ten days after proof of service is filed. *See Beller & Keller v. Tyler*, 120 F.3d 21, 26 (2d Cir. 1997). In *Beller & Keller*, the defendant appealed from the district court's denial of his motion to vacate a default judgment, arguing that the district court entered the judgment before his time to answer had expired. *See id.* at 23. The case originated in federal court, and under the version of Rule 12(a) in effect at the time, a defendant was required to respond to a complaint "within 20 days after being served with the summons and complaint," unless another time was specified by federal statute. *Id.* at 25. The plaintiff purported to have served the defendant on November 2, 1994, when copies of the summons and complaint were affixed to the defendant's door and then mailed

to him in accordance with CPLR Section 308(4). *Id.* at 22. After the defendant failed to answer, the plaintiff moved for default judgment on December 6, 1994. *Id.* The district court granted the motion and subsequently denied the defendant's vacatur motion. *Id.* On appeal, the defendant argued that the district court improperly calculated the answer deadline by counting twenty days from the date the summons and complaint were nailed and mailed. *Id.* at 25. He contended that the district court instead should have relied on the time periods prescribed by CPLR Section 308(4)—that is, it "should first have determined when service was 'complete' under the CPLR by applying the ten-day period after [the plaintiff] filed 'proof of service,'" and then "[f]rom that date, . . . the district court should have permitted [the defendant] thirty days to file an answer." *Id.* at 25.

The Second Circuit rejected the defendant's argument. It highlighted that the rule provided the Defendant twenty days to answer "after the service of the summons and complaint," and it determined that "service of the summons and complaint" occurred when the Plaintiff "'nailed' the complaint and summons to [the defendant's] door and also mailed him a copy." *Id.* at 25–26. *See also id.* at 26 ("[T]he amendment to Rule 12 specifically superseded all state law requirements relating to the time in which to answer," and the CPLR's "proof of service ritual has no bearing on calculating the time in which to answer in federal practice.").

*Beller & Keller* compels this Court to hold that Plaintiff effectuated service on October 3, 2025, when it accomplished the "nailing and mailing" of the summons and complaint, regardless of when Plaintiff filed proof of service and any state-law period following such filing. Adopting Deutsch's contrary position would produce an inescapable conflict with *Beller & Keller*'s binding interpretation of Rule 12(a). The federal answer deadline under Rule 12(a) depends directly on the effective date of service under Rule 4(e). *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A

defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]")..[4] So if the effective date of service under Rule 4(e) in turn depends on the "the New York proof of service rigamarole," as Deutsch contends, then so must the answer deadline under Rule 12(a). But that is exactly the result that *Beller & Keller* forecloses.

Additionally, Deutsch's position conflicts with Rule 4 itself. Rule 4(l)(3) provides that "[f]ailure to prove service does not affect the validity of service," which is plainly incompatible with any provision that would predicate the effectuation of service on the filing of proof thereof. Fed. R. Civ. P. 4(l)(3). Accordingly, the CPLR's provision for determining when service becomes "complete" under Section 308(4) is irrelevant for determining when Plaintiff effectuated service under Rule 4(e).

The Court need not opine on the split of authorities identified by the parties because those cases involved pre-removal service attempts and were thus governed by the CPLR rather than the Federal Rules. *See, e.g.*, *Stop & Shop Supermarket Co. LLC*, No. 10-CV-03052 KMK, 2011 WL 1236121, at *5 ("New York state law will determine whether a defendant has been 'properly . . . served' for purposes of [the federal removal statute]."); *Creative Kids Far E. Inc. v. Griffin*, No. 15-CV-06027 (NSR), 2016 WL 8710479, at *1–2 (S.D.N.Y. Jan. 22, 2016); *Stan Winston Creatures, Inc*, 314 F. Supp. 2d at 181. The one exception is *T.A. v. Leff*, a case that originated in federal court. No. 17-CV-04291 (JFB) (SIL), 2018 WL 5077163 (E.D.N.Y. July 19, 2018). The report and recommendation in *T.A.* determined that the plaintiff had failed to timely serve the defendant because she filed proof of service after the court-ordered deadline to effectuate service, and "federal and New York state courts have held that substituted service in

[4] The relevant portions of Rule 12(a) analyzed in *Beller & Keller* remain in force today, with the exception that a defendant now has twenty-one days to respond to the complaint after being served, rather than twenty days. *See* Fed. R. Civ. P. 12(a)(1)(A).

New York is only 'complete' upon the expiration of ten days after proof of service is filed." *Id.* at *10. But *T.A.* did not engage with *Beller & Keller* or address the incompatibility between the Federal Rules and the CPLR's requirements for service to be "complete," and the Court respectfully declines to follow it.

Accordingly, Plaintiff effectuated service on Deutsch on October 3, 2025, the date that that process was mailed to Deutsch after having been affixed to her door pursuant to Section 308(4). Plaintiff filed the Second Amended Complaint twenty-eight days earlier on September 3, 2025. Plaintiff therefore served Deutsch within the thirty days provided by the Opinion & Order.

**CONCLUSION**

For the foregoing reasons, Deutsch's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 85, 92, and 93.

The Court will refer the parties to the Court's Mediation Program for a settlement conference by separate order.

Dated: September 15, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge